## Appeal of Daniel Snyder et al.

In an action in equity to restrain encroachments on an alleged right of way and to restore the same, *held*, that where a right of way is granted but its locality and duration are not defined, it may become fixed by use and acts of acquiescence of the parties, and when once fixed by user it cannot be changed except in the same manner.

*Held, further,* that the facts in this case are sufficient to authorize the court to grant the relief demanded.

(Decided January 17, 1887.)

January Term, 1886, No. 214, E. D., before MERCUR, Ch. J.,

NOTE.—For the protection of easements by injunction, see note to Greenmount Cemetery Co.'s Appeal, 1 Sad. Rep. 371.

GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Appeal from a decree of the Common Pleas No. 1 of Philadelphia County dismissing exceptions and confirming a master's report in favor of complainant in a bill in equity to restrain encroachments on an alleged right of way and to restore the same. Affirmed.

In 1874, William H. Roth, the complainant, purchased from Daniel Snyder, one of the respondents, premises No. 3928 Story street, Philadelphia, for the consideration of $2,500. A receipt was given at the time of the sale. According to Roth's statement it was as follows:

"November 18, 1874, Received of William H. Roth $1,250, in part payment of $2,500, for house No. 3928 Story street, with the privilege of an alley, either to Union street or Haverford street.                        Daniel Snyder."

Snyder denied that any mention was made of an alley way in the receipt. Roth claims to have destroyed the receipt in 1881 after receiving a deed. He received the deed December 21, 1880, which described the property as follows:

"All that certain lot or piece of ground with the brick messuage or tenement thereon erected, situate in the twenty-fourth ward of the city of Philadelphia, on the south side of Story street, at the distance of 108 feet 3 inches eastward from the east side of Union street, containing in front or breadth on the said Story street, 12 feet 9 inches, and extending in length or depth southward between lines at right angles with Story street, 66 feet 6 inches; bounded northward by said Story street, eastward by ground of David B. Paul, and southward and westward by other ground of said Daniel Snyder."

The deed contained, *inter alia*, the following clause:

"Together with the free use and privilege of a 2-feet wide alley, to be laid out by the said Daniel Snyder, to extend from the rear end of the hereby granted lot of ground, either to Haverford street or the said Union street, as and for a passage way and water course, at all times hereafter, in common with the said Daniel Snyder, his heirs and assigns."

Snyder avers that the alley was to be laid out either to Haverford street or to Story street, and that the words "or the said Union street" were written in the deed by mistake of the conveyancer, and were not noticed by him upon the execution and delivery of the deed.

Roth alleges that immediately after the conveyance, in compliance with the grant and covenants thereof, Snyder laid out a 4-feet wide alley way from the rear end of Roth's premises to Haverford street, which was used by Roth's family and his tenants, in common with Snyder and his workmen and tenants. Snyder denies that he ever opened any such alley in performance of the covenants of his deed, and avers that he merely provided a temporary passage way, as long as it should suit his (Snyder's) convenience, for Roth and his (Snyder's) workmen and tenants, and that he intended to furnish a passage way for Roth into Story street, over ground to the east of his lot, which he hoped to purchase.

In November, 1883, Snyder sold the said 4-feet wide strip of ground (the alleged alley way) to Erickson, the other respondent in this suit. Up to the time when Erickson commenced building thereon, in 1884, Roth and his tenants had free and uninterrupted use of the alley way for ingress and egress from and to Haverford street.

To restrain the encroachments and to compel the restoration of the footway upon said alley this suit was instituted.

The case was submitted to Joseph P. Gross, Esq., as master, who found the following facts:

The receipt given by Snyder at the time of the sale was in the form as alleged by Roth and was destroyed in 1881, after he received the deed of the premises.

About December 1, 1874, Roth went into possession of the property. Snyder was the owner of the adjoining ground on the west and south, the eastern boundary of that on the south being a continuation of the eastern line of complainant's lot and extended to Haverford street, fronting thereon 71 feet westward. These lots were bounded on the east by ground of David B. Paul, containing on Haverford street 17 feet eastward, and extending of that width northward to Story street.

There was a fence on Snyder's property 21 feet west from the said easternmost boundary, running parallel therewith. There was no fence between his property and that of Paul, and none on Haverford street. At the western part of the fence, in the rear or southern end of complainant's lot, a gate opened into an alley which commenced on Snyder's ground about 12 or 13 feet westward from complainant's ground. This alley was used

in common by Snyder and complainant, and their tenants and workmen, in going to and coming from Haverford street, by passing over the uninclosed ground of Snyder, and sometimes by crossing both Snyder's and Paul's lots diagonally. In about a year afterwards these grounds were fenced in on Haverford street, with a large double gate opening into the street from Paul's lot, through which all the parties went to and fro.

In 1881, about five or six months after the delivery of the deed to Roth, Snyder took down the fence which inclosed his lot within 21 feet from his said easternmost line, and put up a new fence 4 feet from that boundary, leaving a strip of ground of that width from the rear end of complainant's lot to Haverford street. He then put a gate of about that width at the Haverford street end of this 4-feet wide strip and the large gate in Paul's fence was closed. Complainant changed his gate at the rear end of his lot from the western to the eastern part, opening directly into said strip.

This strip was used in common as an alley way by complainant and Snyder and their workmen and tenants. They had a free and uninterrupted use from about May, 1881, to May, 1884, when the building operation of Erickson (the correspondent) encroached upon a part of the strip which Snyder had previously conveyed to him on November 19, 1883. On the same day Paul also conveyed to him the ground adjoining on the east the 4-feet wide strip and complainant's property. Subsequently Erickson sold to Snyder the part of the lot fronting on Story street; and about August, 1884, he laid out a 2-feet wide alley to Story street along the eastern boundary of complainant's lot, and tendered him a conveyance of the same on December 20, 1884. This was declined, as well as the use of the alley to Story street. Previous to this purchase Snyder could not practically give an alley to Story street, nor to Union street, as he did not own the ground through to Union street.

Erickson's main building encroached 1½ feet on the southern part of the 4-feet wide strip, leaving a passage way of 2½ feet. The addition of the wooden porch at the junction of the main and back buildings about covers the entire strip.

After Snyder laid out the alley to Story street he put up a fence across the said strip which had been an outlet from the alley running along the rear end of complainant's lot to Haverford street.

The alley from the rear end of complainant's property leading to Haverford street was a great convenience and his tenant left chiefly on account of its closing.

The master reported an opinion as follows:

For the determination of the question presented in this cause, the master has reached the following essential conclusions of fact:

That on November 18, 1874, the complainant purchased from the respondent, Snyder, premises No. 3928 Story street, with the privilege of an alley, either to Union street or Haverford street.

That about December 1, 1874, complainant took possession, using, as a means of egress and ingress to and from Haverford street, the alley running eastward along the rear end of his property, and thence going over Snyder's adjoining uninclosed ground, fronting on Haverford street.

That on December 28, 1880, Snyder executed and delivered a deed to complainant for the property, and therein confirmed to him "the free use and privilege of a 2-feet wide alley, to be laid out by the said Daniel Snyder, to extend from the rear end of the hereby granted lot of ground, either to Haverford street or the said Union street, as and for a passage way and water course, at all times hereafter, in common with the said Daniel Snyder, his heirs and assigns."

That, under all the circumstances, Snyder's afterwards moving the old fence to within 4 feet of his easternmost boundary; his placing a gate at the Haverford street end of this strip; and the user of the same as an alley for about three years, by all parties in common,—constituted a full compliance with the grant of his deed.

That the free use and privilege of said alley was interfered with by the building operation of respondent, Erickson, and the closing of the same by Snyder.

That the said alley under the deed can be restored by the taking down of about 2 feet of Erickson's porch and the opening of the fence at both ends of the same.

That the alley is valuable and of great convenience to complainant's property.

The questions to be determined then narrow themselves to these: first, Is the complainant, upon this state of facts, entitled to the free use and privilege of a 2-feet wide alley as and

for a passage way and water course, from the rear end of his premises to Haverford street? And second, if so, Is the alley to be restored to the same state and condition as it was before the obstructions complained of?

It seems to the master that Snyder, by fencing off the strip of ground from the rear end of complainant's property to Haverford street, exercised his option under the grant to lay out an alley either to Haverford street or Union street. The alley is not described by metes and bounds further than that it shall extend from the rear end of complainant's lot to either of the streets named. There was nothing to prevent Snyder from making an alley 4 feet wide instead of 2. He may have widened it for his own convenience, as the grant is "as and for a passage way and water course, at all times hereafter, in common with the said Daniel Snyder, his heirs and assigns."

The words of the grant are the true guide for determining the course of the alley, and the ordinary rule is that they are conclusive upon the grantor. His setting up of a mistake upon the part of the conveyancer in the drafting of the course of the right of way, without evidence to sustain such an allegation and want of knowledge of the language of his covenant, in justification of the encroachments upon and the diversion of the alley way, are not sufficient to impeach the solemnity of the deed or to reform its covenants. See Greenfield's Estate, 14 Pa. 489, 496, 504 and authorities there cited.

To test the true intent of the parties to a deed, where such mistake or want of knowledge is averred, a chancellor may take into consideration the circumstances surrounding, so to speak, the execution of the instrument—both those before and after the act. See Cannon v. Villars, L. R. 8 Ch. Div. 415; United Land Co. v. Great Eastern R. Co. L. R. 10 Ch. 586; Goddard, Easements, 354, 3d ed.; Washb. Easements [*169], 239, 3d. ed. and cases there cited; Shepherd v. Watson, 1 Watts, 35.

Now what were those surrounding circumstances? Before the delivery of the deed, the receipt given at the time of sale contained an acknowledgment of an alley either to Union street or Haverford street. Upon taking possession complainant commenced going to and from Haverford street by crossing over Snyder's ground. The language of the deed confirmed such a course of way, and it was established by Snyder's own act in fencing off a 4-feet wide strip from the rear end of complainant's

lot to Haverford street, and it became fixed by the user of the same as an alley by all parties for about three years. Its direction could not be altered afterwards.

Washburne, in his work on Easements and Servitudes, p. *169, § 2, says: "Where a right of way is granted, but its locality and duration are not defined, it may become fixed by use and acts of acquiescence of the parties. . . . And when once fixed by user, it may not be changed except by a sufficiently long acquiescence therein by the parties in interest."

Snyder's sale of the 4-feet wide strip to Erickson could not affect complainant's right of way over it. The alley way became a right in the nature of an easement attached to the land and runs with the land. The existence of a right of way necessarily operates as a restriction upon the landowner's rights in the soil and his freedom of use; and there must be a unity of seisin of the land and of the way over the land in one and the same person before there is an extinction of an easement.

The master is therefore of opinion, upon the facts and the law, that the complainant has established the main and essential allegations of his bill; that he is entitled to the relief for which he prays, and that the costs should be put upon the respondents.

Exceptions to this report were filed by the respondents, which after hearing in the court below were dismissed, and the report confirmed, and the following decree submitted by the master was entered:

"It is ordered, adjudged, and decreed: first, that Daniel Snyder and John M. Erickson, respondents herein, be directed to remove the encroachments upon the said 2-feet wide alley running from the rear end of the premises of William H Roth, complainant herein, to Haverford street, and to put the said alley, of a width of 2 feet, into the same state and condition as the same was before the encroachments and obstructions; second, that said respondents, each and every of them, be enjoined and restrained from erecting or maintaining any encroachments upon or making any diversion of said alley, by perpetual injunction of this court; and third, that said respondents pay the costs of this cause."

The assignments of error specified, *inter alia*, the action of the court in entering such decree.

*John G. Johnson* for appellants.

*William H. Ramsay* and *Robert H. McGrath* for appellee.

PER CURIAM:

The evidence is amply sufficient to sustain the master in his finding of facts. This was approved by the court. Under the facts found this decree is clearly right.

Decree affirmed and appeal dismissed, at the costs of the appellants.

